FRANK H. THOMAS and MARY THOMAS, his wife, vs. THE PENNSYLVANIA RAILROAD COMPANY.*

*Foreign Attachment—Case—Demurrer—Pleading—Duplicity—Repugnancy—Corporation—Consignment of Goods—Countermanding Delivery.*

1.　Where each count of a declaration sets forth a verbal agreement that the goods and chattels which are the subject of the suit, were to be delivered according to the direction of the plaintiff and not to the consignee; but also expressly avers that such verbal agreement was subject to the terms and conditions of a written receipt given by the defendant to the plaintiff at the time of shipment, by the terms of which the said goods and chattels were to be delivered to the consignee at a certain place; the said counts will be adjudged bad, and a demurrer thereto sustained.

2.　If the two averments relate to the same transaction they are open to the charge of repugnancy. If they relate to different and separate transactions they are bad because of duplicity, as joining two separate and distinct causes of action in one count.

(<em>December 15, 1900.</em>)

<hr>

* See also <em>2 Pennewill, 411.</em>

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*Anthony Higgins* for plaintiff.

*Andrew C. Gray* for defendant.

Superior Court, New Castle County, November Term, 1900.

FOREIGN ATTACHMENT CASE (No. 43, November Term, 1897).

Demurrer to amended declaration. The facts, and the contentions of counsel appear in the opinion of the Court.

LORE, C. J.:—The demurrer in this case is to the two counts of the amended declaration filed September third, 1900, upon the grounds of duplicity and repugnancy.

Both counts are in case, in assumpsit, and set out the contract of the defendant company as a common carrier, to carry three hundred and one-half barrels of pears from Perryville in the State of Maryland, the point of shipment, to Erie, in the State of Pennsylvania, the place of delivery, which were consigned to one M. J. Schabacker, there to be delivered according to the directions of the said Mary H. Thomas. The declaration avers the receipt of the pears by the defendant company, and the delivery of the same by it to Schabacker, the consignee, at Erie; contrary to the order of the said Mary H. Thomas, which order in both counts substantially was "not to deliver the goods and chattels to any person, but to retain the same in the possession of the defendant company subject to the direction of the said Mary H. Thomas as to delivery."

Each count sets forth a verbal agreement, that the goods and chattels were to be "delivered according to the direction of the plaintiff Mary H. Thomas," and not to M. J. Schabacker, the consignee; but expressly avers that such verbal agreement was "subject to the terms and conditions" of a written receipt, given by the

defendant company to the plaintiff at the time of the shipment of the said goods and chattels; by the terms of which written receipt the said goods and chattels were to be delivered at Erie to the said M. J. Schabacker the consignee.

This action being founded upon a contract, the material inquiry is what is the contract as set out in the declaration? Was it to deliver the pears according to the direction of the plaintiff, as set out in the verbal agreement, or to M. J. Schabacker at Erie, as set out in the written receipt or agreement of shipment?

If these two averments relate to the same transaction, they are open to the charge of repugnancy, and the plaintiff must elect to stand upon one or the other. If they relate to different and separate transactions, they are bad because of duplicity, as joining two separate and distinct causes of action in one count. We find no sufficient averments in the declaration so connecting these two averments as to relieve the declaration of either duplicity or repugnancy. We consider these two counts bad, and sustain this demurrer.

Entertaining these views, we are not called upon to decide the important questions of law raised and argued by the counsel in this case, some of which are as follows:

(1) The alleged unqualified right of the shipper of goods and chattels to countermand their delivery at any time while they are in the possession of the carrier in transit, for any cause in the shipper's discretion.

(2) This involves nice questions of law arising in cases where the shippers are also consignees as well; where the shippers are the owners of the goods and chattels, and well known so to be, although they are shipped to a consignee; or where the goods and chattels have been sold upon credit, and the terms have not been complied with and the shipper seeks to exercise his right of stoppage in transitu; inasmuch as the averments of this declaration do not distinctly raise any of these questions.

(3) Again, we are not called upon to decide, to what extent, a written receipt for the shipment of goods is a mere receipt, or constitutes a contract for their carriage; or to what extent such contract may be explained or varied by parol; nor at what precise time such goods and chattels become and are the property of the consignee and subject to his control; inasmuch as these questions are not properly raised by the averments in this narr.

Upon the election of the plaintiff's attorney, let judgment of *respondeat ouster* be entered.

NOTE.—The above stated case came on for trial on February 11, 1901, before Lore, C. J., and Pennewill and Boyce, J. J. It was proven at the trial that the goods were shipped from Wyoming, Delaware, consigned to M. J. Schabacker at Erie, Pennsylvania, and that before the arrival of the goods at Erie, Pennsylvania, the consignor, Mrs. Thomas, telegraphed the defendant Railroad Company not to deliver the goods shipped; that this telegram was received by the Railroad Company before the arrival of the goods, and that notwithstanding that fact the same were delivered to Schabacker, the consignee.

After the plaintiff had put in his proof, counsel for defendant moved for a nonsuit on the following grounds:

*First,* because from the facts, as shown by the plaintiff, the only right she could have to interfere with the delivery of the goods by the Railroad Company to the consignee was based on a right of stoppage in transitu; that no evidence whatever had been offered suggesting the insolvency of the consignee, and the right of stoppage in transitu being allowed only in case of insolvency, nonsuit must be granted.

*Second.* That there was a fatal variance between the declaration and the proof; the declaration setting out a bill of lading containing, among other things, the name of M. J. Schabacker as consignee; that the declaration alleged that the bill of lading was in

the words as set out "*except* as to the designation of M. J. Schabacker consignee;" that the proof showed another bill of lading wherein the consignee was named as M. J. Schabacker, and that consequently there was a fatal variance between the allegations and the proof.

The Court was about to grant the motion for a nonsuit, when Mr. Higgins, counsel for plaintiff, stated that he refused to take a nonsuit. The Court thereupon instructed the jury as follows:

LORE, C. J.:—Gentlemen of the jury:—The Court consider that the plaintiff in this case has not supported his declaration by such legal proof as to entitle him to a verdict; and we therefore direct you to return a verdict for the defendant.

(The plantiff excepted).

Verdict for the defendant.